### YOUNG et al. v. VALENTINE.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

1. ACCOUNTING—REFERENCE—INTERLOCUTORY JUDGMENT—NECESSITY.

Where an action by a wife revived in the name of her personal representatives after her death against her husband to recover money claimed to belong to her estate was referred to a referee empowered to hear, try, and determine the whole action, it was not error for such referee to proceed with an accounting required without entering an interlocutory judgment on trial of the issues.

2. HUSBAND AND WIFE—ACCOUNTING—PAYMENTS FOR FAMILY EXPENSES.

Where a husband received large sums of money belonging to his wife's separate estate as her agent, he was not entitled, in an action for an accounting, to charge sums deposited to his wife's credit in her bank account, which was used entirely for the payment of family expenses, in the absence of proof that the wife had agreed to support the family.

B. Same—Agreement of Wife to Support Family.

Where a .wife, having a large separate estate, while living in a house belonging to her father, wrote to her husband, who held and cared for her estate as her agent, that, if he would allow her $125 a month, she would pay the tuition of the children out of it, such letter did not constitute an agreement by the wife to support the family for all time with such amount, so as to exempt the husband from his liability for such support.

Appeal from judgment on report of referee.

Action by William B. Young and others against Benjamin E. Valentine. From a judgment entered on a referee's report in favor of plaintiff, both parties appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

C. E. Hughes, for plaintiffs.

Byron Traver, for defendant.

PATTERSON, J. The first question arising on this appeal relates to the action of the referee in taking and stating an account and fixing a liability of the defendant to the plaintiff's testatrix for property or moneys which came into his hands belonging to such testatrix. It seems that the gist of the objection is that there were issues to be tried upon which an interlocutory judgment should have been entered before an accounting was had. The referee was appointed to hear, try, and determine the whole action, which was originally brought by the defendant's wife in her lifetime. An examination of the complaint will show, and its general allegations are to the effect, that the defendant became possessed of much property belonging to his wife, which he managed and controlled as her agent, most of which, if not all, came into his hands originally as administrator with the will annexed of her father. The defendant admits in his answer that he became possessed of some property of his wife's father, and it appears that administration thereof was completed in Connecticut, and that the defendant still continued to hold such property after the completion of administration, such property belonging to and being the distributed share of his wife. As originally framed, it was sought by the complaint, in addition to an accounting, to set aside a conveyance of property situate in the state of New Jersey; but, Mrs. Valentine having died pending suit, that claim was withdrawn upon the trial, so that the only matter left open was an accounting, not of the defendant as administrator of the goods, etc., of his wife's father, but for his own acts relating to her property. The opinion of the referee upon this branch of the case is well considered, and fully expresses all that is necessary to be said upon the subject.

Many questions were discussed on the argument of this case, but there is nothing further before the court for determination, except the correctness of the referee's decision in disallowing the defendant certain amounts of money with which he claims he was entitled to be credited as payments to his wife, and the limitation of the inquiry to that point, in addition to the one already considered, is

required by a stipulation made by the defendant in which he agreed of his own motion, and for the purpose of expediting the appeal (without prejudice to his objection that the action of the referee in stating and settling the accounts between the parties was improper at this stage of the case), that upon the evidence submitted to the referee his action and decision, as set forth in his opinion under each of the heads entitled "First Exception" to "Twenty-Second Exception," inclusive, was proper, and warranted by the facts, except his action under the head of the sixteenth exception, to wit, the payments by checks to the plaintiff or to her bank account; and that on this appeal defendant will not question or undertake to review the action of said referee in charging this defendant with all the items with which he has been charged in the different parts of Schedule A, nor in disallowing any items in any other schedule with which this defendant sought to be credited, excepting his payments by check, the subject of the sixteenth exception. That sixteenth exception was one of a number taken to the accounts as filed by the defendant. Those accounts seem to have been prepared by the plaintiff's attorney, but they were acquiesced in and adopted by the defendant as his accounts. The sixteenth exception is to each and every item of Schedule E 2, part 1, of the account, on the ground that they were not proper charges for the defendant, for the reason that all of said payments were made by the defendant to his wife for living expenses for himself, herself, and his family, and known to him to be for such purposes, and so applied by her; and also for the reason that the law presumed that when a husband, who is living with his wife and family, gives to his wife money from time to time, that it is for the purpose of the living expenses, and not payments to her of moneys belonging to her, held by her husband in trust for her, in the absence of any agreement or understanding between them to the contrary. In stating the general account of the defendant, the referee charged him with receipts amounting to $154,690.18. He credited him with $186,806.91, leaving a balance of $17,888.27. The defendant had claimed in his answer that upon an adjustment of the accounts a large balance would be shown in his favor, and, among other things, claimed that he was entitled to a credit of $33,120.66, being an amount which between March, 1892, and December, 1896, he had paid to his wife in cash, or in checks which were deposited to her credit in the Brooklyn Trust Company, and which were checked out by her, as the referee states, and as is shown to be, in payment of the necessary family bills. The account which was kept in Mrs. Valentine's name in the Brooklyn Trust Company seems to have been opened in 1880, and in it were deposited from time to time moneys furnished by the defendant, which were exclusively used for the purpose of paying the household and family expenses of the defendant and his family in the house No. 21 Monroe Place, in the city of Brooklyn. That bank account seems to have been used for no other purpose. The plaintiff on the trial accounted for the expenditure of all the money deposited in that account from 1892, and showed that the money was spent for household and family purposes alone. There is nothing in

the evidence to indicate that Mrs. Valentine had any knowledge, or even suspicion, that the money deposited in that account was her own, or the proceeds of property belonging to her. Here was an account that had been kept for many years for the particular pur- pose of paying family bills. Apparently, without a notification to the contrary, the defendant kept depositing money in large sums from time to time in that account, and there is nothing which would compel Mrs. Valentine to infer that the account was to be drawn upon for any other purpose, unless, indeed, she may have made an agreement with the defendant that she personally would pay the household expenses of No. 21 Monroe Place,—of which there is no sufficient evidence. There was nothing on the face of the checks which went into that account that would apprise her that they were drawn upon any individual funds of hers. The referee held that the defendant was not entitled to be credited with the item of $33,-120.66, because the proof showed that the money was paid into this family expense account by the defendant, that it was his legal duty primarily to support his wife and family, and that there had been no agreement between the defendant and his wife by which she had consented to relieve him from the legal obligation to support the family. It was contended by the defendant that a letter which was introduced in evidence had that effect. That letter was written in 1888, and in it the defendant's wife, who was then living in a house belonging to her father, said that, if the defendant would allow her $125 a month, she would pay the tuition of the children out of it. That cannot be construed into a contract or an agreement that she would accept for the support of the family for all time $125 a month. Had a contract or understanding between the defendant and his wife been proven, by which the latter relieved the former, in whole or in part, of his legal obligation to support his family, another case would be presented than that now before us; but the legal presumption arising from the defendant's obligation to support his family was not overcome. There was evidence to sustain the holding that the account in which this money was deposited was one for family expenses, and that the money was furnished by the defendant under his legal obligation. All the evidence that was offered upon the subject of the house at Woodsburgh, L. I., and its maintenance, and the evidence offered by the defendant to show that from his condition and circumstances he could not afford to pay the amounts expended in the support of the family at Monroe Place, was considered by the referee, and we see no reason for disturbing his determination of questions of fact.

The judgment must be affirmed, but, as both parties appealed, without costs. All concur.